UNITED STATES, Appellee

v.

ROBERT D. McINTYRE, Private, U. S. Army, Appellant

2 USCMA 559, 10 CMR 57

No. 706

Decided May 28, 1953

LT COL George E. Mickel, U. S. Army, 1ST LT John D. Calamari, U. S. Army, and 1ST LT Justin L. Vigdor, U. S. Army, for Appellant.

LT COL Thayer Chapman, U. S. Army, and 1ST LT Bernard A. Feuerstein, U. S. Army, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

Accused was convicted by a general court-martial of violation of Article 85, Uniform Code of Military Justice, 50 USC § 679, desertion with intent to avoid hazardous duty. He was sentenced to a dishonorable discharge, forfeiture of all pay and allowances, and confinement at hard labor for fifteen years. The convening authority approved the findings and sentence, and the board of review affirmed. We granted accused's petition for review and he contends as follows: (1) the instructions of the law officer were insufficient and prejudicial; and (2) evidence of previous convictions was improperly considered because it was neither offered nor admitted into evidence in conformity with the law.

The accused left his unit shortly before it was scheduled to make an attack on a hill in Korea. He had been informed of the mission and knew the specific task of his company. It was in the front lines and was receiving some artillery and mortar fire. He told no one he was leaving but he departed for the rear because of a claimed illness. Immediately prior to his departure from the front lines, he had been given some medicine and told to return to his duties. He did not return as directed, but went to the rear and stayed in the area of the kitchen trains. He rejoined his squad three days later when the company had finished its mission and it was moved back to that area. On the first day of the engagement, twenty-one casualties were suffered and

560

others were incurred on the subsequent days. The only contention of the accused at the trial was to the effect that Army food made him sick and he left the forward area for that reason.

## I

Accused first assigns as error the fact there was no instruction that he knew hazardous duty was imminent. This is without merit. In the first place there was no issue raised as to lack of knowledge concerning the hazards involved. The facts and circumstances show conclusively that great danger was present, and the accused testified he knew of the mission and that his unit was to pass through one which was being held up by enemy fire. To know that is to know the risks are great. Moreover, the court was instructed that it must find the accused had the specific intent to avoid hazardous duty and it appears somewhat tenuous to contend that the court could make a finding on that element without being convinced that the accused had knowledge of the particular type of duty he intended to avoid. A finding on intent in this offense necessarily embraces a finding that accused was well aware of the fact that hazardous duty would be missed. A man cannot intend to avoid a duty that he does not know exists. Moreover, if the complaint is that the instructions, as given, were not complete and, therefore, not models of clarity, the accused cannot now complain because he failed to make any appropriate request. See United States v. Soukup (No. 533), 7 CMR 17, decided January 23, 1953, and United States v. Day (No. 703), 9 CMR 46, decided April 30, 1953.

## II

Accused next argues that it was error for the law officer not to instruct the court that they could not find him guilty if he in good faith felt he was unable to perform his duty. This is merely stating differently the principles announced by the law officer and we think the same reasons as we expressed in overruling the first assignment of error are applicable here. It hardly raises a question of good faith for a man to leave an area of danger just before a battle merely because the food disagrees with him, particularly when he neither requests permission to leave, nor notifies his immediate superiors that he is indisposed. However, the court had to pass on that issue, and, if the court members believed that the accused, in good faith, left his place of duty for physical reasons, there could be no finding that he absented himself without authority or that he intended to avoid hazardous duty. To find a person went absent without authority with the specific intent to avoid hazardous duty would be to negate a finding that he was acting in good faith. Again, if defense counsel is desirous of having a particular theory considered by the court, he must at least submit to the law officer a request for instructions which set out his contentions.

## III

The next complaint lodged against the instructions of the law officer attacks the alternative form used. The specification against the accused states:

"In that Private Robert D. McIntyre, . . . did on or about 11 September 1951, *with intent to avoid hazardous duty,* namely; to join the company in an attack on Hill 868, quit his unit to wit: • • • ." [Emphasis supplied].

It can be seen the accused was charged only with desertion with intent to avoid hazardous duty. However, in his instructions to the court, the law officer gave as the elements of this offense:

"(a) That the accused quit his unit, organization, or place of duty;
"(b) that he did so with intent to avoid hazardous duty *or to shirk important service;* and
"(c) that his desertion was of a duration, as alleged." [Emphasis supplied].

Appellant contends this was error.

This problem has been considered by us in United States v. Russell L. Williams (No. 133), 2 CMR 92, decided February 21, 1952; United States v. Hemp (No. 290), 3 CMR 14, decided April 8, 1952; United States v. Jenkins (No. 238), 3 CMR 63, decided April 21, 1952; United States v. Moynihan (No. 278), 3 CMR 67, decided April 21, 1952; United States v. Boone (No. 320), 3 CMR 115, decided May 9, 1952; United States v. Cooke (No. 307), 4 CMR 13, decided June 3, 1952; United States v. Shepard (No. 343), 4 CMR 79, decided July 25, 1952; United States v. Jack G. Johnson (No. 498), 4 CMR 128, decided August 7, 1952; United States v. Justice (No. 1106), 5 CMR 71, decided August 28, 1952.

In all of the above cases the accused was charged with one of the three types of desertion, and in all of them, the law officer in instructing the court listed alternative intents under which the accused might be found guilty. We condemned the instructions as being erroneous, but in the Jenkins, Moynihan, Boone and Cooke cases we found no prejudicial error. In those cases we concluded that in order for the instructions to be prejudicial, the court-martial would have to disregard the obvious and important facts pointing clearly and positively to one intent, and seize upon some obscure and unimpressive facts pointing inconclusively to another. We did not believe there was a fair risk that such a difficult line of reasoning would be followed in those cases and we view this case in the same light. In those cases where we found prejudice, we determined the evidence might well have proven all types of intent and it was difficult to ascertain which one the court concluded had been established. We believe this case falls without that rule. To sustain our conclusion we first call attention to the fact that in the new Act, Congress combined intent to avoid hazardous duty and intent to shirk important service in the same subparagraph of Article 85, Uniform Code of Military Justice, supra. It can be argued that they are one as it is reasonably apparent that any duty which is hazardous must of necessity be important. The reverse is not necessarily true but important service includes hazardous duty. They are closely interwoven but there might possibly be some case where, because of the peculiar facts, the accused would be prejudiced by the use of this alternative instruction. Not so here because the whole complexion of the evidence and the sole issue concerned avoiding hazardous duty. The evidence on that element was overwhelmingly against the accused. He went absent just before his unit was to attack a hill designated as Hill 868. One company had been unsuccessful and accused's company was to assist. During the attack it suffered a number of casualties, and twenty-one men were lost. Additional losses were encountered the next two days. The accused went absent at a time which permitted him to miss participating in the mission. He told no one that he was leaving, and he did not rejoin his squad when the medical officer ordered him to return. No one gave him permission to leave his unit when it needed him most. He loitered in the rear area until the mission was completed and then he joined his squad.

Most of the foregoing evidence was furnished by accused while he was testifying as a witness in his own behalf and so there really was no dispute. If we, therefore, test the evidence to determine whether there is a fair risk that the court-martial might have predicated its finding on important service, rather than hazardous duty, we are convinced there was no reasonable possibility of any such risk. The only duty avoided by the accused during his three-day absence was combat on Hill 868 and it would be unrealistic and approaching absurdity for a member of a court not to consider this hazardous. We can conclude with certainty that the evidence on intent to avoid that particular type of duty so outweighed any evidence on a different intent that no consideration would be given to the latter. Once the court became convinced the accused absented himself from the attack, without authority, the intent to avoid hazardous duty is the only one which follows as a matter of course.

## IV

The final assignment of error relates to the error in permitting the court to consider accused's prior ██ convictions when the necessary proof was not introduced into the record. In United States v. Carter (No. 159), 2 CMR 14, decided January 18, 1952, and United States v. Zimmerman (No. 261), 2 CMR 66, decided February 7, 1952, we held that the method used in this case was error. After the accused was found guilty, the prosecution made a statement that he had evidence of three prior convictions of the accused which he proceeded to enumerate. There was no proof, documentary or otherwise, as required by the Carter and Zimmerman cases. This was error but its effect is doubtful. The court-martial could have prescribed the death penalty in the case, had the members been so inclined. The sentence was much less than that but the accused did receive a sentence of confinement for fifteen years and there is some likelihood the length might have been influenced by the number and type of previous convictions. For this reason, we deem it advisable that this case be returned to the board of review for reconsideration of the sentence in the light of our holding.

The finding of the board of review is affirmed, but the case is returned to the office of The Judge Advocate General of the Army for reference to a board of review for reconsideration of the sentence.

Chief Judge QUINN concurs.

Judge BROSMAN concurs in the result.